IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| KRISTINE M. COLLINS, | § | |
|---|---|---|
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No.: 7:10-CV-037-O- KA |
| | § | |
| MICHAEL J. ASTRUE | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| Defendant | § | |

## REPORT AND RECOMMENDATION
## TO REVERSE THE COMMISSIONER'S DECISION
## AND REMAND FOR FURTHER ADMINISTRATIVE ACTION

Plaintiff KRISTINE COLLINS, brings this cause of action pursuant to section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405 (g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Act. By its order of referral (Docket No. 4) the District Court referred this cause to the undersigned for pretrial management and hearing and recommendation on all case dispositive motions. Notwithstanding the provisions of Local Rule 9.1 requiring the presentation of the case on cross-motions for summary judgment, in this Division appeals of Social Security cases are to be treated as appeals and are dispositive in nature. Accordingly, I entered an order directing the filing of the transcript of the proceedings below and the submission of briefs (Docket No. 14). The transcript was duly filed and both parties have duly filed briefs in this cause. For the reasons hereainafter expressed, I make this report and recommend that the Commissioner's decision finding

1

Plaintiff not disabled and not entitled to benefits be REVERSED and the case be REMANDED for further administrative proceedings consistent with the District Court's decision, order and judgment.

## Background

Plaintiff Kristine Collins was born on May 16, 1961. She was 44 years of age on January 1, 2006, her alleged onset date of disability, and was considered a "younger person" throughout the period under consideration in her disability claim, i.e. through April 21, 2009, the date of the ALJ's decision which stands as the final decision of the Commissioner. On May 24, 2006, Plaintiff filed applications for disability insurance benefits and supplemental security income payments (SSI). Plaintiff alleged a disability onset date of January 1, 2006, due to chronic lower-back pain, major depression, affective/mood disorders, hernias, and knee problems. She had a 12th grade education and past relevant work as a home health aide, linen supervisor, seafood department manager, and convenience store clerk.

The Commissioner denied Plaintiff's applications initially and upon reconsideration. Plaintiff then timely filed a request for hearing before an administrative law judge (ALJ). Hearing was conducted on March 5, 2009 following which the ALJ issued a decision on April 21, 2009 determining that Plaintiff was not disabled within the meaning of the Act. From this decision Plaintiff timely appealed to this Court.

## Standard of Review

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Martinez v. Chater, 64 F. 3d 172, 173 (5th Cir. 1995) Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir.

1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)); Garza v. Astrue, 2010 U. S. Dist. LEXIS 22774). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 4.

Disability Determination Method

Social Security regulations set forth a five-step, "sequential evaluation process" for determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five steps, applied in sequence, are:

1. Is the claimant working? If so, and if the work rises to the level of "substantial gainful activity," then he is not disabled.

2. Does the claimant have an impairment or combination of impairments that is "severe"? If not, then he is not disabled.

3. Do one or more of the claimant's impairments meet or equal one of the "Listings" contained in Appendix 1 to the disability regulations? If so, he is disabled per se.

4. Does the claimant have sufficient "residual functional capacity" to return to his "past relevant work?" If so, he is not disabled.

5. Does the claimant have sufficient residual functional capacity--when considered together with his age, education, and past work experience--to do "other work" that is significantly available in the national economy? If so, he is not disabled.

A disability determination at any point in the five-step process is conclusive and renders further analysis of the disability claim unnecessary. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).

## The ALJ Decision

The ALJ issued his decision on April 21, 2009 (Tr.10-21). The ALJ analyzed the case pursuant to the five-step, sequential evaluation process. The ALJ denied the claim at step 5. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, he found that plaintiff had chronic back pain, degenerative right knee pain. and depression which the ALJ found to be medially-severe impairments. At step three, the ALJ determined that plaintiff's impairments or combination of impairments did not met or equal the requirements of any listed impairment that would give rise to "presumptive disability' and accordingly he moved to step four. At step four, the ALJ determined that because of Plaintiff's impairments she was not able to return to any of her past relevant work. This determination necessitated that the ALJ proceed to step five to determine if Plaintiff had sufficient residual functional capacity (RFC), to do "other" work that is significantly available in the national economy. And it is at this step in the ALJ's consideration and analysis that the issue in this dispute arises.

4

<u>Plaintiff's Position</u>

Plaintiff claims that the ALJ's determination that even in the light of Plaintiff's recognized impairments there existed "other" work in significant numbers in the national economy that Plaintiff could perform was not supported by any substantial evidence. Plaintiff asserts that in so finding, the ALJ took into consideration the testimony of a vocational expert who testified at the hearing in response to the ALJ's hypothetical question. Plaintiff asserts that in posing the question to the vocational expert, the ALJ attempted to summarize Plaintiff's impairments but omitted critical limitations the vocational expert must have been allowed to consider. The transcript of the hearing discloses that after the vocational expert had summarized the Plaintiff's past work history, the exchange went as follows:

> "VE: Her past work was as a home health aide which is medium, semiskilled work. She was a seafood department manager which equivocates to meat department manager which is a light, skilled occupation. She was a convenient store clerk, light, semiskilled work. Linen supervisor, light, skilled work. A fast food worker, light, unskilled work. and a kitchen helper, medium, unskilled work.
> ALJ: Thank you. The first, the first hypothetical I want you to consider assumes the vocational factors of an individual who is 47 years of age, who has accomplished the 12th grade education, and who possesses the strength to perform a wide range of light work. However, in that context there would be negligible kneeling at the knees, or coming to rest on the knee due to some knee problems. In the non exertional area there would be concentration necessary for *unskilled work*. Really working in relative isolation with limited contact with peers and coworkers because the claimant does indicate an irritation of people sometime. Given these factors would any past work be available?(emphasis supplied)
>    VE:   No, Your Honor.
>    ALJ:   Would any other work be available?
>    VE:   The occupation of production workers within Texas there's 5,400 of those kinds of jobs, and 32,900 exist in the nation. Folding machine operators, 1, 800 in the state of Texas exist and 31,900 in the nation. And general office clerks, 30,400 within Texas, 481,000 within the nation.
>    ALJ:   The next hypothetical I want you to consider assumes the vocational factors. This would be limited to sedentary work. However, this individual would because of a diagnosis of some bipolar related disorders would posses [sic] an approximate 20 percent reduction in concentration capability with a diminished ability to interact appropriately with peers and coworkers and the general public. And also this person would be

>           away from the job two ro three days a month on an unscheduled basis —
>           resulting from symptoms of a bipolar impairment. Given these factors
>           Ms. Bautroff, would any work be available?
> VE:       No, Your Honor.[1]

Plaintiff asserts that the ALJ's determination of Plaintiff's residual functional capacity (RFC) incident to the step five determination necessarily rested upon certain psychiatric evaluations in the record that had found that Plaintiff suffered from certain functional limitations relating to social functioning, "moderate" difficulties in maintaining concentration, persistence, or pace. One psychiatrist, Dr. Mark Boulos in preparing a mental residual functional capacity assessment[2] found the Plaintiff was "**moderately**" limited in her ability to interact appropriately with the general public and respond appropriately to changes in the work setting,[3] but "**markedly**" limited in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions.[4] His narrative explanation of his summary conclusions recites that she could "understand, remember, and carry out **only** simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting."[5]

The limitations that Dr. Boulos observed in evaluating Plaintiff's residual functional capacity relating to her capacity to understand, remember, and carry out only simple instructions" were not incorporated in the ALJ's hypothetical questions posed to the vocational expert. This Plaintiff ascribes as legal error by the ALJ rendering unsupported the opinion

---

[1] Transcript pages 35-36

[2] Psychiatric Review Technique dated 11/20/2006, Tr. 330-347.

[3] Id. at 340.

[4] Id. at 344.

[5] Id. at 346

testimony of the vocational expert as to the availability to Plaintiff of "other work" in the national community. And, thereby, rendering the conclusion of the ALJ as to Plaintiff's disability unsupported by substantial evidence and subject to reversal.

The Commissioner responds by directing the Court's attention to the ALJ's determination of Plaintiff's residual functional capacity as a part of step 5. The Commissioner asserts that the ALJ properly found that Plaintiff retained the mental residual capacity to work in relative isolation with limited contact with peers, supervisors, and the general public, and had the level of concentration necessary for *unskilled work.* (emphasis supplied). The Commissioner then urges that the ALJ, adopting this finding, proceeded properly to phrase his hypothetical question to the vocational expert, who then rendered his opinion that there was "other" work available to those with Plaintiff's limitations. The Commissioner urges that the ALJ's determination of Plaintiff's RFC was fully supported by "the medical evidence for treating sources, consultive examiners, and DDS state agency physicians including the opinion of one Mark Boulos, M.D. whose opinion the Commissioner characterized as follows:

> "Dr. Boulos similarly opined Plaintiff was able to understand, remember, and carry out simple instructions; make simple decisions; maintain attention and concentration for extended periods; interact adequately with co-workers and supervisors; and respond appropriately to changes in routine work setting."[6]

Addressing Plaintiff's argument that Dr. Boulos' RFC evaluation noted "marked" limitations on Plaintiff's understanding, remembering and carrying out detailed instructions, the Commissioner urges that the **narrative** section of the Boulos report,[7] rather than the checked-box criteria[8] should control, so that it was not error for the ALJ to omit from his hypothetical the

---

[6]    Defendant's Appeal Brief (Docket No. 16), p. 13.

[7]    Tr. 346 that reads as follows: "Claimant can understand, remember, and carry out *only* simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting."(Emphasis supplied)

[8]    Tr. 344.

7

reference to these limitations noted by Dr. Boulos. And the omission of reference to these limitations was supported by the other medical evidence reviewed by the ALJ.

It is this disparate view of the content, meaning and effect of the Boulos assessment that differentiates the parties' positions on this appeal.

### RFC and Vocational Assessments

A number of other courts have addressed the relationships between RFC and Vocational Assessments in the context of non-exertional limitations on the functional capacities of claimants. In *Garza v. Astrue,*[9] Judge Xavier Rodriguez in the Western District of Texas noted:

> "A hypothetical question posed to a vocational expert must (1) incorporate reasonably all disabilities of the claimant recognized by the ALJ, and (2) the claimant or her representative must be afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question. *Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994)*. A hypothetical question that fails to meet these requirements is in error. *Boyd v. Apfel, 239 F.3d 698, 707 (5th Cir. 2001)*. When an ALJ poses an incomplete hypothetical question to a vocational expert, the ALJ cannot rely on the expert's opinion to find that the claimant is not disabled. *See Boyd, 239 F.3d at 707*."

And in *Chapa v. Astrue,*[10] Magistrate Judge Averitte, in the Northern District of Texas noted:

> "...[W}hen an ALJ determines a nonexertional impairment precludes performance of past relevant work, the ALJ is required to produce "expert vocational testimony or other similar evidence" to meet his burden at Step 5 of other jobs existing in the national economy that claimant can perform. *Allsbury*, 460 F. Supp.2d at 721-22, citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985). Two exceptions exist. First, when an ALJ determines a claimant's nonexertional impairment does not significantly effect his RFC and second, even if the nonexertional impairment significantly effects RFC, the ALJ may still utilize the grids as a "framework for considering 'how much the individual's work capability is further diminished....by the nonexertional limitations.'" *Allsbury*, 460 F. Supp.2d at 722, citing 20 C.F.R. pt. 404, subpt. P, app.2, § 200.00(e)(2)(2005). The ALJ in this case did not specify that he was using the "framework" exception to find plaintiff not disabled. Nor did he specifically find plaintiff's nonexertional impairment did not significantly affect plaintiff's RFC. As the court in *Allsbury* commented, the Fifth Circuit has not, "weighed in specifically on whether, when,

---

[9]     2010 U. S. Dist. LEXIS 22774

[10]    Case No. 2:05-cv-00253-J-BB (N.D. Tex. 2008)

or how the framework concept is acceptable as an exclusive basis for decision making." *Allsbury* at 724. *Allsbury* also cites to other courts in this Circuit who have found, "if the Plaintiff suffers from nonexertional or a combination of exertional and nonexertional impairment, the Secretary may not utilize the Medical Vocational Guidelines [grids] for a decision...When the Guidelines may not be utilized for decision making, then the Secretary may only sustain her burden of proof by producing expert vocational testimony..." Id. at 725, citing *Bolton v. Callahan*, 984 F. Supp. 510, 514 (N.D.Tex Sept. 19, 1997); *Frazier v. Chater*, 903 F. Supp. 1030, 1034-35 (N.D.Tex. September 13, 1995). In *Rodriguez v. Barnhart*, 2006 WL 377977(W.D.Tex.) it was determined that when a plaintiff suffers from a combination of exertional and nonexertional impairments, the ALJ may rely on the grids if a finding of disabled is directed. However, the Court further found, "if the applicable rule directs a finding that plaintiff is not disabled, then, only, must the Commissioner consider nonexertional limitations and utilize the testimony of a vocational expert." *Id*. Once the ALJ determines plaintiff to be capable of performing sedentary work, and the grids direct a finding of not disabled, he should then take expert vocational testimony to ascertain the effect of plaintiff's nonexertional impairments on that ability.

Similarly, as noted by Magistrate Judge Averitte, about the 8th Circuit case of *Lucy v. Chater*,[11] the court held that a non-exertional impairment ( in that case, borderline intellectual functioning) must be considered by a vocational expert, and rejected the Commissioner's argument that a vocational expert was not necessary because an individual with borderline intellectual functioning would be able to follow simple instructions and, therefore, would not be prevented from engaging in the full range of sedentary work since the Social Security's list was limited to unskilled sedentary jobs. The court further held that while the non-exertional impairment (there, borderline intellectual functioning) may not rise to the level of a disability, a claimant is entitled to have a vocational expert consider the condition along with other impairments to determine how it impacts his residual functional capacity.

---

[11] 113 F. 3d 905, 908-09 (8th Cir. 1997)

## Error in This Case

In this case, in making his RFC determination the ALJ <u>explicitly accepted</u> Dr. Boulos' determination that Kristine Collins suffered from "markedly limited" ability to understand and remember very short and simple instructions and from "markedly limited" ability to carry out detailed instructions and Dr. Boulos' assessment that Collins was "moderately" limited in her ability to interact appropriately with the general public and respond appropriately to changes in the work setting.[12] He found that these findings of Boulos were consistent with the treating medical records, as well as the overall evidence. Yet, they were either ignored or were subsumed in the phrase "unskilled work" or were the equivalent thereto when the ALJ phrased his hypothetical question to the vocational expert. Whether the ALJ relied on Boulos' narrative to somehow mitigate or limit the severity of Plaintiff's cognitive impairment, or somehow incorporated that assessment in the phrase " unskilled work" is unclear from the record. Nor does the ALJ provide an explanation elsewhere of how he considered or treated the Boulos assessments. Had these limitations been addressed in the hypothetical question posed to the vocational expert, the ALJ's decision might have substantial evidentiary support in the record, but without an explanation, it does not.

The record does not reflect that the vocational expert understood that the phrase "unskilled work" included work which did not require detailed instructions or that was what the ALJ intended by using that phrase. Who is to say that had these Boulos assessed limitations been revealed to the vocational expert in the hypothetical question posed by the ALJ, he might have arrived at a different conclusion as to the availability of any "other work" that Plaintiff could perform with such limitations? Denial of benefits provided by the law should not rest on such a thin reed.

---

[12] Tr. 19, Paragraph 2 referring to Exhibit 12 F.

Recommendation

I find that the failure to incorporate Plaintiff's non-exertional limitations assessed by Dr. Boulos in the hypothetical question posed to the vocational expert was an error of law that rendered the ALJ's finding that Plaintiff was not "disabled" not supported by substantial evidence in the record. Accordingly, I recommend to the District Court that the case be REVERSED and REMANDED to the Commissioner for further action in accordance with the District Courts' order and judgment.

It is so REPORTED AND RECOMMENDED, this 29th day of September, 2010.

                                                  Robert K. Roach
                                                  UNITED STATES MAGISTRATE JUDGE

Standard Instruction to Litigants

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).